**Gale L. PARRISH, Executor of the Estate of Abigail R. Parrish, deceased, Plaintiff,**

v.

**Ira S. LOEB, District Director of the Internal Revenue Service, and the United States of America, Defendants.**

No. 81–4072.

United States District Court, C.D. Illinois.

Nov. 23, 1982.

---

George H. Brinkmann, Howard, Brinkmann & Kolom, Monmouth, Ill., for plaintiff.

Michael J. Weitzner, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., Janet L. Jannusch, Asst. U.S. Atty., Peoria, Ill., for defendants.

## DECISION AND ORDER

ROBERT D. MORGAN, Senior District Judge.

This suit seeks to challenge the application by the District Director of Internal Revenue of the provisions of 26 U.S.C. § 6166, and attendant revenue rulings, to a state of facts which are not contested. Jurisdictional considerations are deemed to be dispositive of issues now before the court. The relevant, uncontested facts, taken from the pleadings and from the content of an affidavit filed by plaintiff, follow.

Abigail R. Parrish died in Warren County, Illinois, on June 28, 1977. Thereafter, her son, Gale L. Parrish, was appointed as her personal representative. He filed this cause in his representative capacity, naming Ira S. Loeb, as District Director of Internal

Revenue, and the United States of America as parties.[1]

At the time of her death, decedent owned interests in 440 acres of farmland in Warren County, Illinois, and a life estate, measured by the life of another person, in 160 acres of farmland in Whiteside County, Illinois. Those interests in land, plus stored crops and growing crops attributable to the land, constituted about 90% of the gross value of her estate. For a period of time prior to decedent's death, the Whiteside land was rented on a crop-rent basis, while the Warren land was rented on a cash-rent basis to her son, Gale. Gale was also employed by her as manager of her farming interests, a service for which he was regularly compensated by the decedent.

On March 17, 1978, plaintiff timely filed an election with IRS, electing to pay federal estate taxes attributable to the farming interests in installments pursuant to the provisions of the Internal Revenue Code of 1954. 26 U.S.C. § 6166.[2] The requisite estate tax return was filed on September 28, 1978, consistently with an extension of time granted by the IRS for such filing. Plaintiff received correspondence from the IRS dated, respectively, February 13, 1979, May 14, 1980, and February 25, 1981, with each transmission stating a "Balance Now Due" to the IRS pursuant to the prior § 6166 election to defer payment of the tax due. Thereafter, on October 26, 1981, plaintiff was advised by the IRS that the District Director had rejected plaintiff's § 6166 election for the stated reason that the Warren land had been rented at decedent's death on a cash-rent basis.

During the time intervening between the filing of the election on March 17, 1978, and the District Director's rejection of that election on October 26, 1981, plaintiff had disposed of certain trust interests in the land and has periodically distributed income derived from the land. His affidavit statement that those dispositions and distributions were made in reliance upon his prior § 6166 election appear to be wholly credible.

This complaint followed. It prays a judgment which will affirm plaintiff's right to pay the tax in installments, consistently with plaintiff's § 6166 election. A critical allegation of the complaint is the statement that plaintiff has no remedy to challenge the action taken by the District Director, other than the remedy herein invoked. The thrust of complaint is twofold. First, it is contended that the District Director is estopped by his acquiescence in the election for an extended period of time to now deny the efficacy of the election made. Secondly, plaintiff contends that the action taken by the District Director was erroneous, arbitrary and capricious to such extent that his ruling threatens a taking of plaintiff's property without due process of law, in violation of the Fifth Amendment to the Constitution.

1. Hereinafter "IRS" is used to designate the defendant, except in those contexts which may require specific identification of a defendant.

2. Section 6166 was designed by Congress to create a safety valve to protect the integrity of closely-held business interests of a decedent against destruction because of the demands of the estate tax provisions of the Code. It provides, in summary, that in those instances in which a substantial part of a decedent's gross estate consists of a closely-held business venture, which the decedent had conducted in his lifetime, his personal representative may elect to pay that portion of federal estate tax which is attributable to that venture in equal annual installments over a period of time not to exceed ten years. The Section also provides that a personal representative may elect to defer payment of the first annual installment for a period not to exceed five years. During that deferment period, interest on the deferred tax is payable annually at a nominal rate fixed by the statute.

Revenue rulings 75–365 and 75–366 have specific application to this factual situation. In essence, those rulings recognize farming as a qualifying, closely-held business in certain circumstances. The rulings have the effect of drawing a distinction between crop rent and cash rent in instances in which farmland was rented at the time of a decedent's death. In the crop-rent situation, the operation is recognized as qualifying under § 6166 if the decedent actively participated in the farming operation. Farmland which was rented at the time of death on a cash-rent basis is defined as investment property which does not qualify as a trade or business under the Act.

Jurisdiction of this complaint is invoked under the provisions of 28 U.S.C. §§ 1331(a) and 1340.[3] Jurisdiction is challenged by the IRS in the motions now pending.

The several pending motions are considered in the context of the above factual summary. Plaintiff has filed a motion for summary judgment upon his complaint. The IRS countered with alternative motions to dismiss the complaint for want of jurisdiction, or for summary judgment for the defendants, or, if both of those alternatives be rejected, for the denial of plaintiff's motion for summary judgment.

The IRS argues that this is a suit against the United States, notwithstanding the joinder of the District Director as a party defendant, and that the suit is barred by the concept of sovereign immunity. Alternatively, the IRS argues that the suit is barred by the Anti-Injunction Act, 26 U.S.C. § 7421, which prohibits a suit to enjoin the assessment or collection of taxes, and the Declaratory Judgment Act, which bars any declaratory suit with respect to federal taxes. 28 U.S.C. §§ 2201, 2202.

The sovereign-immunity argument by the IRS rests upon its contention that each Section 1331(a) and Section 1340 is a grant of general jurisdiction which cannot be construed to constitute a waiver by the United States of its sovereign immunity. That argument is recognized as sound if it must be concluded that this is, in fact, a suit against the United States, as opposed to a suit against the District Director. This is a suit against the United States if the complaint must be construed as challenging the assessment of a tax or the right of the United States to collect the tax assessed. However, a proper construction of the complaint requires the conclusion that neither of those matters are placed in issue. The tax was assessed when the estate tax return was filed. The IRS has never challenged that assessment. The right of the United States to collect the tax was also acknowledged and fixed by that return. The one critical issue is the challenge to the right of the District Director to now insist upon immediate payment of the tax, notwithstanding his acquiescence during a period of more than three years in plaintiff's election to defer payment of the first installment and to pay the tax in ten equal, annual installments once the deferral period has elapsed.

*Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), suggests the appropriate disposition of the sovereign immunity question. The Court there held that a suit against officials of the Bureau of Reclamation to prevent the storage and diversion of water was, in fact, a suit against the United States. The Court reasoned that the suit, in fact, sought to restrain or control the implementation of the statutory scheme for water preservation and utilization, a subject matter in which the United States had a vital interest. The Court said, however, that if it were alleged that the officials had acted beyond the scope of their statutory powers, or that they had exercised their statutory powers in a manner which was constitutionally void, then a suit might be

---

**3.** Those Sections provide original jurisdiction over " * * * all civil actions arising under the Constitution, laws or treaties of the United States," Section 1331(a), and " * * * any civil action arising under any act of Congress providing for internal revenue * * *." Section 1340.

Plaintiff also invokes the provisions of the Mandamus Act, 28 U.S.C. § 1361, as a further jurisdictional basis for his complaint. That position is rejected. Mandamus is a proceeding which is designed to compel an official to perform some nondiscretionary duty which is owed to a party complainant. It is not a proper proceeding to challenge the manner in which such official may have performed such duty. *E.g., Sun Enterprises v. Train,* 532 F.2d 280,

288 (2d Cir.1976). Plaintiff's argument that the action of which complaint is here made is *ultra vires* is not persuasive. The argument wholly ignores the hornbook principle that the power to act encompasses the power to act erroneously. Specifically, plaintiff contends that the revenue rulings to which reference was above made are, in practical effect, legislative action by the District Director which limits and thwarts Congressional intent in its adoption of Section 6166. The District Director's action taken here may be erroneous, but it cannot be construed to be an act of legislation which attempts to amend the Act or to limit the scope which Congress intended when the Act was adopted.

entertained and specific relief might be granted against the officials, as individuals, to compel their compliance with federal law. 372 U.S. at 620–622, 83 S.Ct. at 1006.

■ The situation here alleged is closely parallel to the factual circumstances envisioned by the recited *Dugan* dictum. Plaintiff does not challenge the assessment nor the right of the United States to collect the tax. What he does challenge is the right of the District Director to acquiesce for a period in excess of three years in plaintiff's § 6166 election and to then reverse his position, to reject the election and to demand immediate payment of the assessed tax. Although it is recognized that a certain degree of doubt must attend the issue, it must be concluded that this suit properly lies against the District Director, as an agent of the United States, not against the United States as an entity. The cause is not barred by the doctrine of sovereign immunity.

The more critical issue is presented by the IRS argument that jurisdiction is barred in this cause by application of the Anti-Injunction Act and/or the Declaratory Judgment Act. Reliance is placed upon the line of decisions of which *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); *Commissioner v. "Americans United" Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974); and *United States v. American Friends Service Com.,* 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974), are representative. Those decisions merely reiterate a long-standing principle that there is no jurisdiction to restrain the assessment or collection of a federal tax in advance of payment of the tax. Such decisions are fairly summarized as holding that federal courts may not consider the potential of hardship imposed upon a taxpayer as a fact or warranting restraint of assessment or collection of a tax, and that relega-

tion of the taxpayer to the pursuit of available legal remedies after payment satisfies all due process objections to the assessment or collection of the tax. It must be noted that each of the decisions in this area rests upon a determination that some remedy was ultimately available to the taxpayer, although in certain cases the remedy appears to have been more ephemeral than real.

In this context, the position of the IRS seems to be that *Bob Jones* and related cases are all-encompassing; that is, if the suit touches taxes, jurisdiction is lacking. That argument oversimplifies the issues which this court must decide. A certain perplexity pervades those issues, because there is definitely arguable merit to plaintiff's view that the issues here presented are unprecedented. In that context, plaintiff argues that he has no available legal remedy, if the complaint which he has filed has no jurisdictional foundation. That argument seems to be well founded. In the light of that fact, if the court must conclude that the rationale of *Bob Jones* and like cases requires dismissal, the attendant result could seemingly be a legally-sanctioned miscarriage of justice.

Plaintiff correctly concludes that this case is factually unprecedented. Of cases cited, only *Lane v. United States,* May 20, 1982 (D.Mass.), arose under Section 6166. That court, applying *Bob Jones* and related decisions, held that it was without jurisdiction to entertain a suit to set aside an IRS denial of a claimed election under Section 6166. *Lane* involved rental urban realty, not farmland. To that extent it is distinguishable from this cause.[4]

*Miller v. Standard Nut Margarine Co.,* 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932), is among the earliest decisions interpreting the Anti-Injunction Act. Under

---

4. There is also nothing in the *Lane* opinion which tends to suggest that there was any appreciable delay in the IRS rejection of the § 6166 election.

Moreover, information now available raises a question whether *Lane* should be viewed as having any weight. An appeal was taken to

the Court of Appeals for the First Circuit. The court is now advised that the IRS has reversed its ruling disallowing the election, and that it has filed a motion with the Court of Appeals which has the effect of rendering that appeal moot.

facts there recited, which led the Court to the conclusion that the challenged tax was illegal and that extraordinary circumstances were presented, the Court affirmed a judgment which had enjoined collection of a tax. The Court said that the Anti-Injunction Act was no bar under the facts presented, the Court saying that enforcement of that Act would be arbitrary and capricious. *Ibid.* at 510–511, 52 S.Ct. at 263. In contrast to later decisions, the Court ignored the fact that the taxpayer did have an available post-collection remedy.

*Enochs v. Williams Packing Co.,* 370 U.S. 1, 6, 7–8, 82 S.Ct. 1125, 1128, 1129, 8 L.Ed.2d 292 (1962), interpreted *Standard Nut* as holding that an injunction suit could be maintained only if it is clear that the government could not ultimately prevail on the merits and if there also exists a clear basis for equity jurisdiction. The Court said that the possibility that collection of the demanded tax might cause irreparable injury to the taxpayer provided no basis for avoiding the Anti-Injunction Act. The taxpayer was left to his post-collection remedy in a suit for a refund.

The Court in *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), characterized the principle enounced in *Williams Packing* as fixing the "Capstone," limiting judicial construction of the Anti-Injunction Act in any suit to enjoin the assessment or collection of a tax. *Ibid.* at 742, 94 S.Ct. at 2048. In the same context, the Court criticized *Standard Nut* for its approval of a suit for injunction merely because it had appeared that collection of the tax might have caused irreparable injury to the taxpayer. *Id.* at 744–746, 94 S.Ct. at 2049–51. The rationale of *Bob Jones* was that the prospect, or likelihood, of irreparable injury provides no jurisdictional basis for a suit to enjoin assessment or collection of a tax. The Court said that the taxpayer must pursue his post-collection remedy by a suit for a refund.

The *Bob Jones* principle has been since consistently followed. *E.g., United States v. American Friends Service Committee,* 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974);

*Commissioner v. "Americans United" Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974); *Educo, Inc. v. Alexander,* 557 F.2d 617, 619–622 (7th Cir.1977); *Investment Annuity, Inc. v. Blumenthal,* 609 F.2d 1 (D.C.Cir.1979); *Cattle Feeders Tax Committee v. Shultz,* 504 F.2d 462, 464–466 (10th Cir.1974). However, each of those decisions has one common denominator, namely, that the taxpayer did have an available remedy, either by a suit in the Tax Court to contest an assessment or by a suit for refund after the tax was paid.

■ Where irreparable injury may result from a deprivation of property pending final determination of the respective rights of the parties, the Due Process Clause requires that the party whose property is taken be given an opportunity for some kind of predeprivation hearing or postdeprivation hearing, at which the showing of the validity of the deprivation must be made. *Commissioner v. Shapiro,* 424 U.S. 614, 629–630, 96 S.Ct. 1062, 1071, 47 L.Ed.2d 278 (1976). The Anti-Injunction Act does apply, however, when a complainant is afforded an adequate opportunity for a deferred judicial determination of his legal rights. *Ibid.* at 630–632, 96 S.Ct. at 1072. Substantially, that statement reaffirms the principle exemplified by *Bob Jones,* yet it contains the necessary implication that due process would be denied in the event of a showing of potential irreparable injury and of the absence of any remedy which would afford to the aggrieved party an expeditious determination as to his rights.

In *Bob Jones,* the Court observed that the cause did not present a situation in which the aggrieved party had no access to a judicial remedy. So saying, the Court said, "Were that true, our conclusion [that there was no jurisdiction] might well be different." 416 U.S. at 746, 94 S.Ct. at 2050.

The court aptly observed in *National Restaurant Association v. Simon,* 411 F.Supp. 993, 996 (D.D.C.1976):

"While the Supreme Court has held that the delay occasioned by postponing review until refund litigation does not pose constitutional problems, it has nowhere

held or implied that such problems could be avoided if a judicial forum was absent altogether."

■ Although the issue is not entirely free from doubt, the court is convinced that it does have jurisdiction in this cause over the District Director. No cited case can be construed to parallel this complaint. It presents a factual basis for a potential estoppel, a likelihood that the estate may be substantially damaged and a situation in which the taxpayer has no legal remedy if jurisdiction be here denied. It is substantially conceded that plaintiff does not have any available remedy. The assessment is not disputed. Thus, the Tax Court provides no forum. The fact that the ultimate tax liability is not disputed effectively precludes any cause of action for a refund. The circumstances presented must be construed as a denial to plaintiff of due process of law, if the statutory bar to this cause must be rigidly applied. The IRS motion to dismiss this cause for want of jurisdiction must therefore be denied.

■ Plaintiff invokes the doctrine of equitable estoppel in support of his motion for summary judgment. Although the doctrine of equitable estoppel may rarely be invoked against the government or government agents, numerous decisions have held that the doctrine does apply in a proper case. *E.g., Portmann v. United States,* 674 F.2d 1155 (7th Cir.1982); *United States v. Lucienne D'Hotelle,* 558 F.2d 37 (1st Cir.1977); *Walsonavich v. United States,* 335 F.2d 96 (3d Cir.1964); *Schuster v. Commissioner,* 312 F.2d 311 (9th Cir.1962); *Simmons v. United States,* 308 F.2d 938 (5th Cir.1962). As the court said in *Simmons,* the doctrine of equitable estoppel "may be invoked against the United States in cases involving" taxation, under proper circumstances and "with appropriate caution." 308 F.2d at 945. In *United States v. Lucienne D'Hotelle, supra,* the court said that estoppel is properly invoked in a suit involving taxation in "instances when it would be uncon-

scionable to allow the government to reverse an earlier position." 558 F.2d at 43.

*Schuster v. Commissioner, supra,* is closely parallel, factually, to this cause. The IRS had determined that the assets of a trust were not includable in a decedent's gross estate for estate tax purposes. At a later date, the IRS reversed that determination and filed suit against the trustee and against the trust beneficiaries to collect estate taxes upon the trust assets. In the interim, the trustee, in reliance upon the first determination, had distributed the assets of the trust to the beneficiaries. The court held that the IRS was estopped to demand payment from the trustee. The court stated a general proposition that estoppel may not be invoked to prevent the IRS from correcting a mistake of law, adding that that proposition could not be applied in every instance to permit the correction of a legal mistake if correction would result in manifest injustice. 312 F.2d at 317.

■ The same reasoning is appropriate in this case. The District Director did acquiesce in plaintiff's § 6166 election for more than three years. He expressly recognized that election by his submission of annual statements for interest payments due. By the time the District Director later disavowed the election, plaintiff had disposed of certain assets of the estate and had distributed farm income in reliance upon that election. It appears likely that the estate was placed in some jeopardy by those circumstances which were attendant upon the District Director's change of his position. The District Director is now estopped to assert that the farm assets are not appropriate for Section 6166 election.

For the reasons stated, IT IS ORDERED that the IRS motions are DENIED, and summary judgment is entered for the plaintiff against the District Director, affirming plaintiff's right to pay the estate tax in installments pursuant to the provisions of Section 6166.[5]

---

5. It is not deemed necessary to consider plaintiff's argument that the revenue rulings related to farm-interest classification are void.