**Sig and Barbara SHORE, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 580–89T.**

United States Claims Court.

Aug. 21, 1992.

See also 26 Cl.Ct. 826.

Albert B. Ellentuck, Washington, D.C., attorney of record, for plaintiffs.

Bartholomew Cirenza, Washington, D.C., with whom was Acting Asst. Atty. Gen. James A. Bruton, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### INTRODUCTION

In this tax refund suit filed on October 26, 1989, plaintiffs, Sig and Barbara Shore, jointly seek a refund of federal income taxes in the amounts of $54,174 and $14,783 for the tax years 1974 and 1975, respectively. In response to this court's *sua sponte* order of May 5, 1992, raising jurisdictional issues, the parties have submitted briefs addressing the applicability of the "full payment rule," as discussed by the Supreme Court in *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on reh'g*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Although both parties contend and agree that this court has subject matter jurisdiction over plaintiffs' claims, upon a thorough consideration of the issues underlying the foregoing contentions, we are, nevertheless, convinced that this court lacks jurisdiction to hear plaintiffs' claims. On the facts here, where plaintiffs have failed to pay the entire tax liability assessed (including interest and penalties) for the tax years in dispute, this court must dismiss their claims for lack of jurisdiction.

### FACTS

Plaintiffs, Sig and Barbara Shore, filed individual joint income tax returns for the taxable years 1974 and 1975 with the Internal Revenue Service. In a letter dated July 23, 1985, defendant (the Commissioner of Internal Revenue) assessed an income tax deficiency of $56,174 plus unstated interest against plaintiffs for the taxable year 1974. Plaintiffs paid said $56,174 on March 10, 1987. Thereafter, on June 24, 1987,[1] plaintiffs filed a refund claim (*i.e.*, Form 1040X) with the Service seeking a refund of this payment, plus allowable interest for the taxable year 1974.[2] On or about November 3, 1987, the Service disallowed plaintiffs' claim for taxable year 1974. Consequently, plaintiffs filed suit in this court on October 26, 1989, seeking a refund of $56,174 for the taxable year 1974. Upon said filing for the 1974 tax year, plaintiffs had an outstanding amount of $95,795.78 *in unpaid interest*.

Similarly, in the same letter from the IRS dated July 23, 1985, *supra*, plaintiffs were assessed a deficiency on their 1975 federal income tax return in the amount of $14,783.00, plus $3,696.00 in penalties and unstated interest. On or about June 23, 1987, plaintiffs paid the 1975 tax deficiency of $14,783. Subsequently, plaintiffs sought a refund of this amount, plus interest as allowed by law, by filing (December 14, 1987) a Form 1040X claim for refund. Defendant disallowed plaintiffs' refund claims on April 26, 1989. Following thereon, plaintiffs filed their refund petition in

---

1. Plaintiffs claim the date of filing to be June 10, 1987. (Plaintiffs' Brief in Support of the Court's Jurisdiction, filed June 1, 1992, p. 2 ("Pl.Br.")). However, as evidenced by Defendant's Exhibit No. 4, the date of filing is indicated as June 24, 1987. (Defendant's Position Re: "Full Payment Rule," filed June 1, 1992, Exh. 4 ("Def.Br.")). Since suit was filed in this court on October 26, 1989, either date satisfies § 6532(a)(1) of the Internal Revenue Code which requires the taxpayer to wait at least six months after filing an administrative claim before filing a judicial claim. Therefore, this discrepancy is largely immaterial.

2. Plaintiffs claim that this request included a claim for "interest as allowed by law," (Pl.Br., p. 2) whereas defendant states that plaintiffs did not request refund of interest which plaintiffs had paid (Def.Br., p. 2).

this court on October 26, 1989, for the years 1974 and 1975.

One year and four months after plaintiffs filed their refund claims in this court, on February 27, 1991, the parties entered into a hospitable stipulation regarding the payment of disputed interest and penalties assessed during the tax years 1974 and 1975. This stipulation reads, *in haec verba,* as follows:

> It is hereby stipulated and agreed by and between the parties that plaintiffs' liability to pay defendant assessed interest in the amount of $95,795.78 with respect to tax year 1974 and to pay defendant assessed interest in the amount of $23,709.04 and assessed penalties in the amount of $3,696.00 with respect to tax year 1975 *shall rest with the Court's decision as to whether or not plaintiffs owed the tax that was paid for the years 1974 and 1975.*
>
> *If the Court decides* that such tax was incorrectly assessed and paid for tax year 1974, the plaintiffs shall not be liable for payment of the assessed interest to defendant for that year. *If the Court decides* that the tax was correctly assessed and paid with respect to tax year 1974, the plaintiffs shall not present any independent argument to refute their liability for payment to defendant of the interest assessed for that year.
>
> *If the Court decides* that such tax was incorrectly assessed and paid for tax year 1975, the plaintiffs shall not be liable for payment of the assessed interest and assessed penalties to defendant for that year. *If the Court decides* that the tax was correctly assessed and paid with respect to tax year 1975, the plaintiffs shall not present any independent argument to refute their liability for payment to defendant of the interest and penalties assessed for that year.[3]

On the same day the parties entered into the foregoing stipulation, defendant also filed a counterclaim for interest and penalties for 1974 ($95,795.78) and 1975 ($27,405.04), all of which remain unpaid by plaintiffs. Almost one year later, on April 14, 1992, defendant filed a motion *in limine,* suggesting that this court may not have jurisdiction over plaintiffs' claims. Since that time, in view of the February 27, 1991 stipulation, defendant has steadfastly contended that this court possesses jurisdiction over plaintiffs' claims.

ISSUES

Given the foregoing facts and the pending motion *in limine* regarding taxable year 1975, this court has raised questions *sua sponte* by order dated May 5, 1992, regarding its total jurisdiction over plaintiffs' claims in view of the Supreme Court's holding in *Flora v. United States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on reh'g,* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). The parties responded to said order, which requested them to brief their respective positions regarding this issue. Specifically, we sought to clarify:

1. Whether this court lacks jurisdiction to hear a claim for an income tax refund under 28 U.S.C. § 1346 and § 1491 where the assessed tax has been duly paid in full, but the assessed interest and penalties remain unpaid, and

2. Whether a hospitable stipulation regarding the plaintiffs' liability respecting unpaid interest (for each year) and penalties (for 1975 only), as entered into by and between the parties, is efficacious with respect to fixing jurisdiction in this court.

CONTENTIONS

A. *Plaintiffs*

Plaintiffs contend that this court has proper jurisdiction over their claims as determined under 28 U.S.C. § 1346 and § 1491 and the full-payment-rule, as enunciated by the Supreme Court in *Flora.* They further argue that the full-payment-rule has been satisfied as a result of having paid the total disputed income taxes assessed for each of the years 1974 and 1975 *prior* to filing their refund claims and suit in this court. However, they admit that the penalties and interest assessed for such years remain unpaid; but plaintiffs aver that they have not raised any indepen-

---

**3.** Pl.Br., Exhibit A (Stipulation dated February 27, 1991) (emphasis added).

dent issues regarding the liability of interest and penalties assessed during the tax years before the court.[4] Rather, plaintiffs assert that the liability for such costs, as resolved by stipulation, "will follow" this court's determination of the "entire tax liability." [5]

Further, plaintiffs contend that said stipulation unequivocally obviates separate litigation regarding the issue of penalties and interest and that this court, in such circumstances, has the "ability to decide the entire case." [6] Finally, plaintiffs argue that defendant has constructively waived the payment of penalties and interest respecting said years by entering into the stipulation. Moreover, plaintiffs contend that they will suffer hardship if this court denies jurisdiction over their claims because the statute of limitations for any new suit for tax refund for the tax years in issue have expired.[7]

### B. Defendant

Similarly, defendant contends that federal law, as codified in 28 U.S.C. § 1346(a)(1) and § 1491, and the Supreme Court's interpretation of the application in *Flora v. United States*, confer jurisdiction over plaintiffs' refund claims as averred for the taxable years 1974 and 1975. Further, defendant argues that the full-payment-rule, established in *Flora*, does *not* require taxpayer-plaintiffs to pay assessed interest and penalties where these issues are not specifically submitted for substantive consideration to the court and are automatically resolved in accord or consistent with the dispositive issues.

Stated differently, defendant avers that the stipulation entered into, *supra*, does not confer, nor is it intended as a mechanism in conferring, jurisdiction upon this court, but rather is intended to only clarify the specific substantive issues. However, defendant contends that it has not, by executing the stipulation with plaintiffs, constructively waived the interest and penalties for 1974 and 1975, as asserted by plaintiffs.

## DISCUSSION—*Jurisdictional Determination*

### A. Waiver of Sovereign Immunity

■ As stated by the Supreme Court, with respect to § 1346, the question regarding whether a federal district court has jurisdiction over a tax refund suit filed by a taxpayer against the United States "depends upon whether the United States has waived its sovereign immunity to, and has consented to, such a suit in the District Court." [8] *Flora*, 362 U.S. at 179–80, 80 S.Ct. at 648; *see Tonasket v. United States*, 218 Ct.Cl. 709, 590 F.2d 343 (1978) (clarifying that the *Flora* decision is equally applicable to the predecessor Court of Claims). Moreover, congressional waivers and consents must not only be expressed explicitly, but also construed strictly. *Library of Congress v. Shaw*, 478 U.S. 310, 318–19, 106 S.Ct. 2957, 2963–64, 92 L.Ed.2d 250 (1986); *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1383 (Fed. Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983).

In the case at bar, there appears to be no disputed facts with respect to the operative factual issue underlying this court's jurisdiction inasmuch as plaintiffs admit that they have failed to pay interest assessed for the 1974 tax year, and interest and penalties assessed for the 1975 tax year. Thus, since it is plaintiffs' burden to establish that this court has threshold subject

---

4. The court observes that this is a specious argument inasmuch as defendant's amended answer and counterclaim for unpaid interest and penalties puts these issues squarely before the court to the same extent as the tax liabilities for each year.

5. Pl.Br. p. 5.

6. *Id.* at 7.

7. The statutes of limitations expired on April 26, 1991 and November 3, 1991 for plaintiffs' tax years 1974 and 1975, respectively.

8. "The Claims Court, concurrently with the United States District Courts, has jurisdiction over suits for the refund of taxes. *See* 28 U.S.C. §§ 1346(a)(1), 1491 (1988)." *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991).

matter jurisdiction over the case at bar, *Schiff v. United States*, 24 Cl.Ct. 249, 252 (1991) (citations omitted); *Burnside–OTT Aviation Training Center v. United States*, 24 Cl.Ct. 553, 556 (1991), plaintiffs must, therefore, establish that the United States has waived its sovereign immunity in cases such as this where payments made to the Commissioner by the taxpayer have only discharged a portion of the gross amount of the assessment for a specific tax year.[9]

### B. *The Jurisdiction of the United States Claims Court Over Tax Refund Suits*

#### (i) Tucker Act

The central provision which grants the United States Claims Court jurisdiction over suits with respect to which the United States has waived its sovereign immunity is the Tucker Act, 28 U.S.C. § 1491.[10] *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Generally, this court has been granted jurisdiction over tax refund suits, 28 U.S.C. § 1491(a)(1), concurrent with the jurisdiction of federal district courts. 28 U.S.C. § 1346(a)(1) and (2). However, because the Claims Court is a court of special and limited jurisdiction, *American Maritime Transport, Inc. v. United States*, 870 F.2d 1559, 1563 (Fed.Cir.1989); *Kennedy v. United States*, 19 Cl.Ct. 69, 75 (1989), there are certain prerequisites that must be met to establish jurisdiction. *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (waivers of sovereign immunity are subject to any conditions imposed by Congress). Moreover, it is the responsibility of this court to determine whether it may properly adjudicate the claim. Stated differently, "a litigant cannot manipulate a court's jurisdiction by [certain action or inaction]." *Abruzzo v. United States*, 24 Cl.Ct. 668, 670 (1991) (*citing Rocovich*, 18

Cl.Ct. at 423); *see Berdick v. United States*, 222 Ct.Cl. 94, 99, 612 F.2d 533, 536 (1979); *Rocovich v. United States*, 18 Cl. Ct. 418, 421 (1989), *aff'd*, 933 F.2d 991 (Fed.Cir.1991); *Lambropoulos v. United States*, 18 Cl.Ct. 235, 236 n. 2 (1989).

#### (ii) Internal Revenue Code

Section 7422(a) of the Internal Revenue Code (the Code) acts as a waiver of the government's sovereign immunity by providing a forum for taxpayers who seek "the recovery of any ... tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected...." I.R.C. § 7422(a). In order to qualify as a claimant in the tax refund forums of the Claims Court, taxpayer-plaintiffs must first file an administrative claim for a refund with the Commissioner of Internal Revenue. *See Weiner v. United States*, 15 Cl. Ct. 43 (1988) (citations omitted). In addition, § 6532(a)(1) of the Code requires that the suit be filed with this court no earlier than six months after filing the claim with the Internal Revenue Service, unless the Secretary renders a decision within that time, to allow for administrative action. *Id.* at 46. Finally, and most importantly, with respect to the issue at bar, the *Flora* doctrine "requires ... *full* payment [by the taxpayer] of the assessment before an income tax refund suit can be maintained in a Federal District Court" (emphasis added), and thus the Claims Court. 362 U.S. at 177, 80 S.Ct. at 647. With respect to the foregoing, we observe that the parties cannot, by an affirmative action, confer jurisdiction where none exists. *Abruzzo v. United States, supra.* Moreover, whether jurisdiction vests in this court with respect to a plaintiff's claim is determined as of the date of filing. *Diamond v. United States,*

---

**9.** "A party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists." *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936). *Rocovich*, 933 F.2d at 993.

**10.** The Tucker Act confers jurisdiction on the United States Claims Court to hear claims

"found either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491.

228 Ct.Cl. 493, 498, 657 F.2d 1194, 1197 (1991).

### (iii) Tax Refund Suits—Statutory prerequisites—§ 1346

28 U.S.C. § 1346(a)(1) (1988) provides that federal district courts have jurisdiction, concurrent with the United States Claims Court, over—

> [any] civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws....

The proper interpretation of this jurisdictional statute was exhaustively discussed by the Supreme Court in *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on reh'g*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). There, the Commissioner of Internal Revenue "levied [against the petitioner] a deficiency assessment in the amount of $28,-908.60, *including interest*" (emphasis added). After petitioner paid only $5,058.54 of the total deficiency assessment, a refund claim was filed for that amount with the Commissioner. When that claim was denied by the Service, a refund suit was instituted in the district court.

That court improvidently went to the merits and favored the government (although fully recognizing "that the petitioner should not maintain the action because he had not paid the full amount of the assessment"). The Tenth Circuit remanded with direction to vacate the judgment and dismiss the complaint inasmuch as it failed to state a claim "because petitioner had not paid the entire assessment for the period in question." Following thereon the Supreme Court granted certiorari and in *Flora I*, 357 U.S. 63, 78 S.Ct. 1079, and given said facts held that "[t]he judgment of the Court of Appeals is Affirmed." On rehearing in *Flora II*, 362 U.S. at 146, 80 S.Ct. at 631, the Court postured the issue as follows:

> ... whether a ... court has jurisdiction under 28 U.S.C. § 1346(a)(1) of a suit ... for the refund of income tax payments *which did not discharge the entire amount of his assessment.*

(emphasis added). To that issue, following rehearing, it simply and unequivocally stated that—

> In the 1957 Term, we decided that *full payment of the assessment* is a jurisdictional prerequisite to suit, 357 U.S. 63 [78 S.Ct. 1079].... After giving the problem our most careful attention, we have concluded that our original disposition of the case was correct.

*Flora II*, 362 U.S. at 146, 80 S.Ct. at 631 (emphasis added).

### C. *Statutory History*

Although the Supreme Court "conclude[d] that the language of § 1346(a)(1) can be more readily construed to require payment of the full tax before suit than to permit suit for recovery of a part payment," the Court also indicated that a thorough evaluation of the statutory language, which it claimed to be "inconclusive," and the legislative history, which it claimed to be "irrelevant," was of little assistance in construing the statute. 362 U.S. at 150–52, 80 S.Ct. at 633–34.

Consequently, the Court turned to the historical case law regarding the statute in hopes of extracting a meaningful interpretation. In 1875, the "full-payment-rule," which requires taxpayers to pay their *assessments* before filing a claim in District Court or in the Claims Court, 362 U.S. at 154, 80 S.Ct. at 635, was first discussed in *Cheatham v. United States*, 92 U.S. 85, 88–89, 23 L.Ed. 561 (1875), wherein it stated that—

> ... the statute which we have copied allows appeals from the assessor to the commissioner of internal revenue; and, if dissatisfied with his decision, *on paying the tax* the party can sue the collector; and, if the money was wrongfully exacted, the courts will give him relief by a judgment, which the United States pledges herself to pay. * * * the general government has wisely made *the payment of the tax claimed,* ... a condition

precedent to a resort to the courts by the party against whom the tax is assessed.

(emphasis added).

Recognizing the above as dictum, the Supreme Court in *Flora* emphasized that the *Cheatham* Court was nevertheless interpreting the claim-for-refund statute from which, as amended, § 1346 is derived. Upon hearing reargument in *Flora,* the Supreme Court reiterated its belief that the language in *Cheatham* "reflects an understanding that full payment of the tax was a prerequisite to suit." 362 U.S. at 155, 80 S.Ct. at 636.

Subsequent to the *Cheatham* decision, and apparently finding adequate support in the government's contentions, the Court followed an "unquestioned understanding and uniform practice that full payment of an assessment was a condition upon the right to sue for refund." 362 U.S. at 180, 80 S.Ct. at 648 (Whittaker dissenting). However, today it is difficult to divine uniformity inasmuch as numerous jurisdictional decisions are postured on both sides of the issue, and there continues to be perplexity over the proper interpretation of this jurisdictional statute.

On the one hand, some District Court and Claims Court decisions have resisted recognizing jurisdiction where part of the tax, interest, or penalties are not *fully* paid before the tax refund claim is filed. On the other hand, some District Court and Claims Court decisions indicate that a reading of § 1346 and *Flora* do not warrant such confining limitations on their jurisdiction which may preclude a plaintiff from getting his or her "day in court."

D. *Interpretations of Flora and Full–Payment–Rule*

Certainly, since the holding in *Flora,* some 30 years ago, there has been confusion regarding the true application of the full-payment-rule to tax refund suits filed in the United States Claims Court. During this period, this court has generally interpreted the *Flora* decision as imposing a requirement that the *entire deficiency assessment* for the tax years at issue be fully

paid before this court is vested with jurisdiction to hear the claim.

For example, in *Lambropoulos v. United States,* this court ordered the dismissal of plaintiffs' claim, *sua sponte,* because the plaintiffs failed to fully pay assessed deficiencies of interest and penalties before filing their suit. 18 Cl.Ct. 235, 237 (1989). There, the plaintiffs filed a complaint with this court on June 8, 1989, which challenged an audit for the tax year 1983 whereby the IRS assessed a tax deficiency due of $781.24. Of this total amount due, $47.37 represented an unpaid penalty and $733.87 represented unpaid interest at the time of filing their complaint.

In reviewing the jurisdictional issue, the Claims Court interpreted *Flora* as conditioning tax refund suits upon the *full payment of the tax assessed.* Citing the Claims Court and its predecessor, *i.e.,* the Court of Claims, the *Lambropoulos* court treated unpaid interest and penalties the same as the underlying tax for jurisdictional purposes. 18 Cl.Ct. at 237 (*citing Green v. United States,* 220 Ct.Cl. 712, 713, 618 F.2d 122 (1979); *DiNatale v. United States,* 12 Cl.Ct. 72, 74 (1987); *Frise v. United States,* 5 Cl.Ct. 488, 490 (1984)). Therefore, since the plaintiffs owed the United States $781.24 in taxes and penalties at the time of filing their complaint, this court held that it lacked jurisdiction to entertain the claim.

Similarly, *DiNatale* held that *Flora* requires full payment of the tax liability, penalties, and interest as a necessary prerequisite for filing a tax refund suit in the Claims Court. There, the *pro se* plaintiff sought a refund of $20,684, plus penalties and interest for the tax years 1977 and 1978. Plaintiff did not dispute that the interest and penalties remained unpaid when she filed her tax refund claim. Based on the court's interpretation of *Flora,* defendant's motion to dismiss was also granted.

In addition, in *Frise,* the Claims Court granted the defendant's motion to dismiss where the plaintiff failed to pay the full amount of his tax liability for the 1976 tax year in issue. When the plaintiff filed his

complaint on November 8, 1983, a total of $6,821.74 in assessed tax, interest, and costs were outstanding with respect to that year. Again citing *Flora* and *Green*, the Claims Court held that it "lack[ed] jurisdiction over actions to recover any internal revenue tax, penalty, interest or cost erroneously or unlawfully collected unless the taxpayer has first made full payment of said tax, penalty, interest, or cost." 5 Cl. Ct. at 490 (*citing Flora*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623, *reh'g denied*, 362 U.S. 972, 80 S.Ct. 953, 4 L.Ed.2d 902 (1960), and *Green*, 220 Ct.Cl. 712, 713, 618 F.2d 122 (1979), respectively).

More recently, the Claims Court has continued to consistently hold that the full payment of a deficiency assessment for the tax year in issue is required before it has jurisdiction to entertain a claim for refund. In *Schiff*, the plaintiff failed to pay $24,-394.58 in taxes, penalties, and interest before filing his claim for refund on August 16, 1990. 24 Cl.Ct. at 253. There, we interpreted *Flora* as standing for the principle that the full payment of "all of the assessments" issued against the plaintiff is a "rudimentary requirement for all viable tax refund suits." *Id.* (*citing Flora*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958). Where the taxpayer opts not to pay the full assessment prior to filing for a refund in the Claims Court or the Federal District Courts, the taxpayer has a second mutually-exclusive option to file in the United States Tax Court. *Id.* at 253. The *Schiff* court interpreted the available options as follows:

> On the one hand, they may elect to petition for a deficiency redetermination in the Tax Court without paying any of the amounts assessed prior to litigating therein, or on the other hand, *pay all outstanding assessments*, file an administrative claim for refund with the IRS, and then petition for a refund in the Claims Court or in the District Court. If the taxpayer elects to pursue the first alternative, the second option is no longer available.

24 Cl.Ct. at 253 (*citing Elbert v. Johnson*, 164 F.2d 421, 423–24 (2d Cir.1947)). Therefore, *Schiff* recognizes that the taxpayer has two options available in resolving a dispute with the IRS. Where the taxpayer makes a choice between these viable options and files in the Claims Court or a District Court, the taxpayer also must meet the prerequisites, which include "paying all outstanding assessments."

Citing the binding precedent of *Tonasket*, the *Schiff* court recognized that that decision similarly interpreted *Flora* as requiring the full payment of all taxes, interest, and penalties assessed for the tax years in issue before the taxpayer files for a tax refund. 218 Ct.Cl. at 711–12, 590 F.2d 343. In *Tonasket*, the plaintiffs sought a refund of their partial payment of $300 against their total income tax deficiencies and penalties assessed for 1972, 1973, and 1974 in the amount of $117,000. One of the two jurisdictional barriers [11] which the plaintiffs confronted was their failure to pay the entire assessment prior to filing a claim in the Court of Claims. Against that background, plaintiffs argued that the *Flora* holding specifically referred to only district courts and, therefore, did not apply to the Court of Claims. In response, the court denied such a construction of the *Flora* holding which would preclude "part-payment tax suits in district courts, but [would] allow[ ] such part payment actions here." 218 Ct.Cl. at 712. The Court of Claims thus determined that the *ratio decidendi* of the *Flora* ruling required it to dismiss plaintiffs' claim where the plaintiffs had failed to make "full payment of *all the deficiencies and penalties levied* by the Service." *Id.* (emphasis added).

The above interpretation of *Flora* enunciated in *Schiff* and *Tonasket* is further supported by the predecessor Court of Claims' holding in *Green*, 220 Ct.Cl. at 713, 618 F.2d 122, which held that it lacked jurisdiction over the plaintiff's claim for refund for the tax years 1971 and 1976 at issue. This was so because upon filing a claim for

---

**11.** The second jurisdictional barrier was due to the plaintiffs' earlier filing of the same claim in the United States Tax Court.

refund in the Court of Claims, $101.81 in taxes, interest, and costs remained unpaid for the 1971 tax year. Jurisdiction was wanting for the tax year 1976 on other grounds. Based on its interpretation of *Flora*, the *Green* court held that the "full payment of the tax liability [assessed] for any given year is a jurisdictional prerequisite to maintaining a tax refund action." 220 Ct.Cl. at 713, 618 F.2d 122.

Another example of the consistent rulings in favor of this interpretation of *Flora* is found in *Kretchmar v. United States*, 9 Cl.Ct. 191 (1985). In *Kretchmar*, the plaintiffs sought a refund claim in this court on February 3, 1984. With respect to the taxable year 1978, the plaintiffs admitted that there existed an unpaid balance of $18,425.44 in taxes, penalties, and interest. 9 Cl.Ct. at 191. There, this court recognized that "as a jurisdictional prerequisite, it has long been settled law that federal courts may *not* adjudicate tax refund suits for a given year until and *after the deficiency assessed for that year has been paid in full.*" *Id.* at 195 (*citing Flora*, 357 U.S. 63, 78 S.Ct. 1079 (emphasis in original and added). Therefore, and consistent with *Tonasket*, 218 Ct.Cl. at 711–12, this court again held that it lacked jurisdiction over the taxable year 1978 where the plaintiffs failed to pay the *full assessment due* for the taxable year in issue.

Finally, and on a brief note, *Saunooke v. United States* reiterates the principle that adherence to sovereign immunity mandates that this court require all plaintiffs to pay the "entire assessed deficiency and file[ ] a timely claim for refund pursuant to 26 U.S.C. § 7422(a)." 8 Cl.Ct. 327, 330 (1985) (*citing Frise*, 5 Cl.Ct. at 490 (citing cases)).

In direct contrast to the panoply of pro-*Flora* holdings, three recent decisions by the Claims Court have sharply diverged from the strict application of the full-payment-rule and have assumed jurisdiction where the taxpayer has paid the assessed income tax only but not the assessed penalties and, in other cases, interest. *Katz v. United States*, 22 Cl.Ct. 714 (1991) ("*Flora id.* did not require that a taxpayer prepay penalties" in contra distinction to "assessed tax and interest"); *Magee v. United States*, 24 Cl.Ct. 511 (1991) (extending the dicta in *Katz*, holds that the payment of *interest* is not required under the full-payment-rule); and *Cohen v. United States*, 23 Cl.Ct. 717, 719 n. 3 (1991) (only full payment of tax is required where interest is not raised as an independent issue).

In *Katz*, the defendant filed a motion to dismiss the plaintiffs' claim on the basis that they had failed to pay penalties assessed for the two tax years there at issue. In support of its argument, the defendant cited two earlier decisions by the Claims Court which had interpreted *Flora* as requiring the full payment of taxes, interests, *and* penalties under the full-payment-rule, *i.e.*, *Lambropoulos*, *supra*, and *DiNatale*, *supra*. However, the *Katz* court rejected *Lambropoulos* and *DiNatale* ostensibly as cases which misconstrued *Flora*. [12]

In contrast, the *Katz* court interpreted *Flora* as "establish[ing] the principle that full payment of an IRS deficiency assessment, defined as assessed tax and interest,[13] is a jurisdictional prerequisite to a suit in federal district court." [14] 22 Cl.Ct. at 715. On the other hand, the *Katz* court

---

12. In addition to *Lambropoulos* and *DiNatale*, *Katz* rejected similar decisions by the Claims Court which interpreted the "full-payment-rule" established in *Flora* as requiring the full payment of assessed taxes, interest, and penalties during the tax year(s) at issue. *Saunooke*, 8 Cl.Ct. at 330, *aff'd*, 806 F.2d 1053 (Fed.Cir.1986); *Frise*, 5 Cl.Ct. at 490. Not only did the *Katz* court reject the non-binding precedent of the Claims Court (significantly, *Saunooke* was affirmed by the Court of Appeals for the Federal Circuit), but its decision, while recognizing the "binding precedent" of *Tonasket*, 218 Ct.Cl. at 712, apparently did not apply said precedent as

dispositive of the jurisdictional issue regarding failure to pay the penalties *in full* ("the *lack of full payment of all of the deficiencies and penalties levied* by the Service preclude this lawsuit in this court," *Id.* (emphasis added)); (*Flora* requires the full payment of taxes and penalties before jurisdiction vests in the Court of Claims); and *Green*, 220 Ct.Cl. at 713, 618 F.2d 122 (1979) (*Flora* requires the full payment of taxes, penalties, and interest under the full-payment-rule)).

13. *Citing* 362 U.S. at 147, 80 S.Ct. at 631–32.

14. *Citing* 362 U.S. at 177, 80 S.Ct. at 647.

observed that "*Flora* did not require that a taxpayer prepay *penalties* as well" (emphasis added). This conclusion seems to fly squarely in the face of *Flora II*, 362 U.S. at 146, 80 S.Ct. at 631, and *Rocovich*, 933 F.2d at 995. As previously noted, in the former, the Supreme Court emphasized that—

> This is our second consideration of the case. In the 1957 Term, we decided that *full payment of the assessment* is a jurisdictional prerequisite to suit.... we have concluded that our original disposition of the case was correct.

And in the latter case, the Federal Circuit noted that—"[e]xceptions to the full payment rule have been recognized by the courts only where an *assessment* covers divisible taxes." [15]

■ Moreover, *Flora II* apparently puts this issue to rest when it emphatically stated that:

> ... Reargument has but fortified our view that § 1346(a)(1), correctly construed, requires full payment of the assessment before an income tax refund suit can be maintained in a Federal ... Court.

362 U.S. at 177, 80 S.Ct. at 647. Giving ordinary words their ordinary meaning, this simply means that before a taxpayer may proceed with a refund suit in this court or any district court, it must first pay in full all taxes, interest, and penalties to the extent assessed. This position appears to be totally consistent with *Green*, 220 Ct.Cl. at 713, 618 F.2d 122, where the predecessor court stated that the "plaintiff has not paid *the full amount of the income tax liability assessed* by the Service." In such case, the predecessor court held that—"[f]ull payment of the tax liability for any given year is a jurisdictional prerequisite to maintaining a ... refund action." Similarly, *Rocovich*, 933 F.2d at ·993, likewise acknowledges the Supreme Court's construction of the "full payment rule of *Flora*" to "require[ ] full payment

of the assessed tax liabilities before suit can be commenced."

In view of the foregoing, this court also disagrees with the holding in *Magee*, which follows the *Katz* rationale and extends the holding regarding "penalties" there, based on footnote 37 in *Flora*, to unpaid interest in *Magee*, 24 Cl.Ct. at 512.

Finally, although *Cohen v. United States* also apparently stands for the proposition that the payment of *interest* is not required under the full-payment-rule, the qualified exception was intended in *Cohen* to apply *only* where the plaintiff *does not* claim either interest or penalties as an independent issue submitted to the court. 23 Cl.Ct. 717, 719 n. 3 (1991). Similarly, in the instant case, plaintiffs have submitted a claim, embracing *Cohen*, which does not directly present this court with an issue of either interest or penalties for independent consideration. Therefore, since *Cohen* is non-binding precedent, until decided on appeal by the Court of Appeals for the Federal Circuit, this court is free to determine whether it will adopt the logic of *Cohen* or decide alternatively.

In doing so, we must determine whether the partial or lack of payment towards outstanding interest and penalty assessments are relevant and imperative issues for purposes of establishing jurisdiction under 28 U.S.C. § 1346 and § 1491 where the interest and penalty assessments are not affirmatively brought before this court as independent issue(s). If the answer to this inquiry is in the negative, as held in *Cohen*, this court must then determine whether the penalties and interest assessed during the tax years 1974 and 1975 at issue are, nevertheless, constructively before this court.

(i) The Impact of the Parties' Stipulation

■ The parties contend that by virtue of the stipulation entered into with respect to the payment of penalties and interest assessed for the taxable years 1974 ($95,-795) and 1975 ($23,709.04 interest and $3,696.00 penalties), the issues of the effi-

---

**15.** At bar, the interest assessed ($95,795.78) and unpaid for 1974, and the interest ($23,709.04) and penalty ($3,696.00) assessed and unpaid for 1975, all occurred *prior* to the filing of the refund claims in 1987. Moreover, the assessed amounts do not involve or relate to divisible taxes.

cacy of the assessment of said amounts are not issues submitted for independent consideration by this court. Interestingly, defendant has not asserted that this court lacks jurisdiction as a result of plaintiffs' failure to pay the interest and penalties owed to defendant. However, as the Claims Court made very clear in *Rocovich*, the "fact that the IRS acts inconsistently by allowing itself to be sued in some instances without full payment does not vest jurisdiction in the Claims Court." 18 Cl.Ct. at 422.

Moreover, the prospect of the defendant vesting or divesting this court of jurisdiction through separate, independent agreements between itself and plaintiffs is a disturbing concept. Especially disturbing is the February 27, 1991 stipulation entered into by the parties, subsequent to the filing of this claim for the admitted so-called purpose of "clarifying" the jurisdiction of this court. Here, it is clear that since the outcome of the stipulation, *i.e.*, who is liable for penalties and interest assessed during the tax years at issue, is inextricably intertwined in our ruling upon the substantive tax dispute,[16] it is imperative that we consider said penalties and interest, at the very least, to be issues constructively before this court for purposes of applying the *Flora* doctrine.

This we do find for all of the following reasons. First and foremost is the fact that in defendant's original answer, filed on February 23, 1990, the failure to pay the $3,696.00 penalty assessed for taxable year 1975 was averred as an affirmative defense, pursuant to the full-payment-rule expressed in *Flora*, as a consequence of which jurisdiction was allegedly wanting.

Secondly, in its First Amended Answer and Counterclaim, filed on March 21, 1991, defendant, incorporating the 21 paragraphs of the original answer, added paragraphs 22 through 27, averring a counterclaim regarding the following amounts previously duly *assessed*:

| Item | Taxable Year | |
| --- | --- | --- |
| | 1974 | 1975 |
| Interest | $95,795.78 | $23,709.04 |
| Penalty | –0– | 3,696.00 |
| Total | $95,795.78 | $27,405.04. |

Thirdly, on June 3, 1991, there was filed plaintiffs' Answer To Defendant's Counterclaim, wherein they alleged the following, *inter alia*, as the Third Affirmative Defense, that:

Barbara Shore is *not liable for any interest or penalties* on the amounts of tax which are the subject of this lawsuit because she is, with respect to such amounts and to the tax liability on which they are based, an "innocent spouse" within ... § 6013(e)(1)....

(emphasis added).

Fourthly, on or about July 24, 1992, there was filed plaintiff's Amended Answer To Defendant's Counterclaim which mirrored plaintiffs' initial counterclaim answer except that the Third Affirmative Defense was modified to read as follows:

Barbara Shore is *not liable for the tax* which is the subject of this lawsuit because she is, with respect to such tax, an "innocent spouse" within ... § 6013(e)(1)....

(emphasis added).

Fifthly, in its August 7, 1992 Motion For Reconsideration of the court's order filed on July 24, 1992, granting plaintiffs' motion for leave to amend their answer to defendant's counterclaim, defendant conceded that it "advised plaintiffs' attorney that the innocent spouse defense should be withdrawn" because it "implicated the *Flora* issue that the stipulation had been intended to address, and it raised a fatal jurisdictional flaw in plaintiff's [sic] case."

Finally, we find the pointed observation of Judge Lydon in *Abruzzo*, 24 Cl.Ct. at 670, to be most appropriate here—

Indeed, "a litigant cannot manipulate a court's jurisdiction by failing to assert what would be a jurisdictional bar, since a court would be required to raise a

---

**16.** *See* the Stipulation in the "FACTS" section, *supra*.

jurisdictional impediment when the court became cognizant of it."

(citations omitted).

Notwithstanding the foregoing artful moves of the parties, we, nevertheless, find it to be irrelevant whether or not the full amount of the deficiency assessment is brought as an independent issue before this court in order for the "full-payment-rule" to apply. There is no indication in the binding precedent cited *supra* that only those specific assessments brought before the court must be fully paid. Such a conclusion clearly flies in the face of *Flora*, which simply and clearly "requires full payment of the *assessment.*" *Flora*, 362 U.S. at 177, 80 S.Ct. at 647 (emphasis added). As stated in *Rocovich*, this "full payment" obligation is *the* assessed amount deemed to be due the IRS, and not what the taxpayer concedes as due or pays. 18 Cl.Ct. at 423.

To accept the argument of the parties at bar would set a dangerous precedent, whereby future parties could creatively structure independent agreements contingent on the outcome of the Claims Court's proceedings and control tax refund jurisdiction therein. Whatever merits may exist in hospitably structuring such agreements, it is patently clear to this court that they may be abused to circumvent the "pay first and litigate later" requirement of pursuing tax refunds in the Claims Court and Federal District Courts. *Manning v. United States*, 53 A.F.T.R.2d 84–1584, 84–1585 (S.D.N.Y.1983) (*cited in Rocovich*, 18 Cl.Ct. at 422). In addition, by allowing such agreements to *carte blanche* vest or divest this court of jurisdiction at the whim of the parties would deny the mandatory nature of jurisdictional laws and would, therefore, effectively frustrate congressional intent underlying tax refund litigation in federal courts. An example of a potential frustration of congressional intent could be the *prompt collection* of valid assessments

*prior* to often-lengthy litigation proceedings.

Finally, the stipulation was entered into by and between the parties in December 1990 (filed February 27, 1991), approximately one year and two months after plaintiffs filed their complaint in this court on October 26, 1989. However, jurisdiction over plaintiffs' claims "either does or does not exist [*at the time of filing* ]." *Rocovich*, 18 Cl.Ct. at 423 (*citing Diamond v. United States*, 228 Ct.Cl. 493, 498, 657 F.2d 1194, 1197 (1991) (court cannot have jurisdiction conferred on it), *cert. denied*, 459 U.S. 831, 103 S.Ct. 70, 74 L.Ed.2d 69 (1982)).[17] Here, plaintiffs had failed to pay the interest and penalties assessed for the taxable years in issue as of the date of filing their complaint in this court. Therefore, we are constrained to apply the binding precedent of the Court of Claims, the Court of Appeals for the Federal Circuit, and the Supreme Court in *Flora*, and hold, on these facts, that we are without jurisdiction to entertain plaintiffs' tax refund claims.

(ii) Plaintiffs' Claim of Undue Hardship

Plaintiffs have set forth an argument that to deny them jurisdiction at this late date where they are foreclosed from seeking relief in the United States Tax Court, and the added fact that the statute of limitations may have expired, would induce unfair hardship. Furthermore, plaintiffs intimate that they are unfairly prejudiced by this court's order addressing a jurisdictional issue *sua sponte* at this late date in the litigation. However, as stated above, plaintiffs have the affirmative burden of establishing that this court possesses proper jurisdiction over their claims. *KVOS, Inc.*, 299 U.S. at 278, 57 S.Ct. at 201. Since this is a fundamental legal principle which is clearly established in Rule 8(a) of the Rules of the United States Claims Court,[18] this court cannot yield to sympathy for plaintiffs' oversight or neglect in adequate-

---

**17.** In *Rocovich*, 18 Cl.Ct. at 423, the court there noted that—"[t]he Tax Court was disturbed with the concept that the Government at its own whim or even as a matter of stated policy can vest or divest the court of subject matter jurisdiction. *Manning*, 53 A.F.T.R. at 84–1586."

**18.** This rule states in part: "[A] pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction to support it...."

ly considering this jurisdictional issue before filing in the Claims Court.

Moreover, as to the timing of this court's order, it is well established that we may, *and are duty bound to*, examine our own jurisdiction *at any time*. *Lambropoulos*, 18 Cl.Ct. at 236 n. 2 (*citing Berdick*, 222 Ct.Cl. at 99, 612 F.2d at 536; *Wheeler v. United States*, 3 Cl.Ct. 686, 689 (1983)). As stated in *Rocovich*, "a litigant cannot manipulate a court's jurisdiction by failing to assert what would be a jurisdictional bar, since a court would be required to raise a jurisdictional impediment when the court became cognizant of it." 18 Cl.Ct. at 423 (*citing Johns–Manville v. United States*, 855 F.2d 1556, 1565 (Fed.Cir.1988), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989)). Therefore, we must determine the sufficiency of our jurisdiction as of the date of filing the complaint, *i.e.*, October 26, 1989. At that time, plaintiffs had failed to pay their full assessed income tax liability for the tax years at issue and yet had the choice available to litigate either in the Claims Court, or in the Tax Court without prepaying the full assessed amounts for all years in issue. Nevertheless, plaintiffs voluntarily chose the forum of the Claims Court. As stated, plaintiffs bear the burden of establishing jurisdiction for their claims. Moreover, in our well-structured tax system it clearly provides for—"one tribunal for prepayment litigation and another for post payment litigation, with no room contemplated for a hybrid of the type proposed by petitioner." *Flora II*, 362 U.S. at 163, 80 S.Ct. at 640. Against this background, there is no hardship in requiring plaintiffs to thoughtfully consider the most propitious forum for their purposes.

CONCLUSION

For all of the foregoing reasons, this court is compelled to instruct the Clerk to enter judgment dismissing plaintiffs' complaint for lack of subject matter jurisdiction. Costs to the defendant.

IT IS SO ORDERED.